20008331-1

# United States of America



## DEPARTMENT OF STATE

## *To all to whom these presents shall come, Greetings:*

tify That Tom Heinemann, whose name is subscribed to the document hereunto annexed, was
e of subscribing the same Assistant Legal Adviser, Office of the Legal Adviser, Department
United States of America, and that full faith and credit are due to his acts as such.

*This certificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, Michael R. Pompeo, Secretary of State, have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this eighteenth day of November, 2019.

_____ Secretary of State

By _____
Assistant Authentication Officer,
Department of State

Iss   suant to CHXIV,
Sep   1789, 1 Stat. 68-
US    22USC 2651a;
30    SC 1733 et. seq.; 8
144   ULE 44 Federal Rul
Civ   edure.

19
EXHIBIT A



DISTRICT OF COLOMBIA, ss:

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, do hereby state as follows:

1. I am now, and have been since February 2012, the Assistant Legal Adviser for Law Enforcement and Intelligence in the Office of the Legal Adviser of the United States Department of State, Washington, D.C. The Office of Law Enforcement and Intelligence is the primary office in the Department of State responsible for extradition and other international law enforcement matters. As the Assistant Legal Adviser, I am the head of that office and therefore responsible within the Department for overseeing U.S. policy and practice with regard to the transfer of fugitives between the United States and foreign countries for the purposes of their return to face trial in the jurisdictions in which they have been charged. I make the following statements based upon my personal knowledge and information made available to me in the performance of my official duties.

2. There are a variety of lawful processes by which governments may transfer a fugitive sought by another country to face trial or serve a sentence, some of which are properly described as "extraditions." Extradition is the formal process of transferring a fugitive to another country specifically for the purpose of standing trial or serving a sentence (as opposed to, for example, other forms of lawful transfer, like removal based on violation of a country's immigration laws). The United States routinely requests that other countries transfer fugitives to it by extradition or other means.

3. The United States makes numerous extradition requests to other countries for fugitives wanted in the United States. There are at least three different legal frameworks that may apply to such extraditions. First, the United States has bilateral extradition treaties with

numerous countries around the world, and frequently makes requests pursuant to those treaties. Second, the United States is a party to multilateral law enforcement conventions that include provisions on extradition. While the United States does not itself generally extradite on the sole basis of a multilateral convention, many countries do, and the United States commonly makes requests based on such conventions. In fact, Ukraine, upon its ratification of one such convention, the United Nations Convention Against Transnational Organized Crime, indicated that it can use Article 16 of that Convention as a basis on which it can extradite fugitives to countries with which it does not have a bilateral extradition treaty, such as the United States. Third, some countries are able to extradite a fugitive solely on the basis of their domestic law. The United States routinely makes extradition requests to other countries on this basis as well.

4. When the United States makes an extradition request to another country, it submits the request through the diplomatic channel, either via a diplomatic note sent by the U.S. Embassy in the requested country to that country's Foreign Ministry, or in some cases, to the embassy of the requested country in the United States. These notes are prepared pursuant to instructions from my office and are made after we have received a request from the Department of Justice to do so. In some cases, the Office of International Affairs at the Department of Justice may pass an informal copy of a request to foreign counterparts, but the formal extradition request is always made through the diplomatic channel.

5. In addition to extradition, the United States has for decades also requested that other countries use less formal mechanisms available under their domestic law – for example, exclusion, expulsion or deportation – to transfer fugitives. In such cases, the United States

EXHIBIT A

typically asks the requested state to transfer the fugitive, but does not involve itself in the particulars of that state's domestic process for accepting and executing such requests.

6. All of the mechanisms described above are lawful ways in which fugitives can be transferred between countries. A judicial finding that some or all of these mechanisms are not available for seeking the return of a fugitive to the United States would handicap an important law enforcement tool and have significant consequences for bringing fugitives to face justice in the United States.

7. In general, the United States makes requests to Ukraine through the diplomatic channel for the return of fugitives under the United Nations Convention Against Transnational Organized Crime and, in the alternative, by way of deportation, expulsion, or other means available under Ukrainian law.

8. With respect to the case of Mr. Meneshian, the United States made a formal request through the diplomatic channel for his return to the United States. It is solely a matter of Ukrainian law whether Ukraine is able to transfer Mr. Meneshian pursuant to the United States' request for his return, and, if so, under what legal theory. There is no international legal prohibition on the United States making the request or on Ukraine acting on the request.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 15th, 2019, in Washington, D.C.

Tom Heinemann