KAYE, McLANE, BEDNARSKI & LITT, LLP
Marilyn E. Bednarski, State Bar No. 105322
mbednarski@kmbllaw.com
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Alexey V. Tarasov, *pro hac vice*
alexey@tarasovlaw.com
5211 Reading Road
Rosenberg, Texas 77471
Telephone: (832) 623-6250
Facsimile: (832) 495-4168

Attorneys for Plaintiff, Hakop Meneshian

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HAKOP MENESHIAN,

Plaintiff,

vs.

UNITED STATES OF AMERICA AND WILLIAM BARR, IN HIS CAPACITY AS THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Defendants.

**CASE NO. 2:19-cv-09394-CJC-AFM**

**[Hon. Cormac J. Carney]**

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

**Date: December 16, 2019**
**Time: 1:30 p.m.**
**Courtroom: 7C**

# TABLE OF CONTENTS

I. INTRODUCTION....................1

II. THIS COURT DOES NOT LACK SUBJECT MATTER JURISDICTION TO GRANT THIS REQUEST....................1

III. MR. MENESHIAN IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM....................4

- a. Mr. Meneshian's Extradition Would Violate His Constitutional Rights....................4
- b. Extradition Should Not Be Sought Without a Treaty or Other Authority....................5
- c. The UNTOC Does Not Provide a Legal Basis for Mr. Meneshian's Extradition....................7
- d. The Fugitive Disentitlement Doctrine Has No Application Here....................9

IV. MR. MENESHIAN WILL LIKELY SUFFER IRREPARABLE INJURY ABSENT RELIEF....................10

V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION....................10

VI. CONCLUSION....................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Rahman Omar Adra v. Clift*, 195 F.Supp. 857 (D. Md.1961) .......... 3

*Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) .......... 1

*Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991) .......... 10

*Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993) .......... 1, 3

*Blaxland v. Commonwealth Dir. of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003) .......... 1

*Boumediene v. Bush*, 553 U.S. 723 (2008) .......... 4

*Casey v. Dep't of State*, 980 F.2d 1472 (D.C. Cir. 1992) .......... 2

*Conforte v. Comm'r of Internal Revenue*, 692 F.2d 587 (9th Cir. 1982) .......... 9

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) .......... 1

*Factory v. Laubenheimer*, 290 U.S. 276 (1933) .......... 1

*Hussein v. INS*, 817 F.2d 63 .......... 9

*Johnson v. Eisentrager*,
339 U.S. 763 (1950) ........................................................................ 4

*Lopes v. Reederei Richard Schroder*,
225 F.Supp. 292 (E.D.Pa.1963) ........................................................ 3

*McElvv v. Civiletti*,
523 F. Supp. 42 (S.D. Fla. 1981) ..................................................... 1

*Molinaro v. New Jersey*,
396 U.S. 365 (1970) ........................................................................ 10

*Murphy v. Ramsey*,
114 U.S. 15 (1885) .......................................................................... 4

*Philp v. Macri*,
261 F.2d 945 (9th Cir. 1958)............................................................ 3

*Reid v. Covert*,
354 U.S. 1 (1957) ............................................................................ 4

*Seattle Totems Hockey Club, Inc. v. National Hockey League*,
652 F.2d 852 (1981)......................................................................... 3

*Sidali v. I.N.S.*,
107 F.3d 191 (3d Cir. 1997)........................................................... 1, 3

*State of Alaska, ex rel. Yukon Flats Sch. Dist. v. Native Vill. of Venetie*,
856 F.2d 1384 (9th Cir. 1988).......................................................... 11

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
240 F.3d 832 (9th Cir. 2001)............................................................ 11

*United States v. Alvarez-Machain*,
504 U.S. 655 (1992) ...................................................................... 5, 6

*United States v. Khalupsky*,
No. 15-CR-, 2018 WL 3127226 (E.D.N.Y. May 29, 2018) ................................. 6

*United States v. Knotek*,
925 F.3d 1118 (9th Cir. 2019) .......... 1

*United States v. Smith*,
18 U.S. 153 (1820) .......... 3

*United States v. Trabelsi*,
845 F.3d 1181 (D.C. 2017) .......... 2

*United States v. Tuzman*,
2015 U.S. Dist. LEXIS 173780 (S.D.N.Y. Dec. 30, 2015) .......... 2

*United States v. Van Cauwenberghe*,
934 F.2d 1048 (9th Cir. 1991) .......... 9, 10

*United States v. Verdugo-Urquidez*,
494 U.S. 259 (1990) .......... 4, 5

*Valentine v. United States ex rel Neidecker*,
299 U.S. 5 (1936) .......... 6, 7

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... 4, 5

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1985) .......... 1

**Statutes**

28 U.S.C. § 1350 .......... 3
Article 4, § 2 of the Constitution .......... 1

**Other Authorities**

Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Articles 24, 49, 50 (August 12, 1949) .......... 3

International Covenant on Civil and Political Rights, G.A. Res. 2200A(XXI), art. 9, U.N. Doc. A/6316 (March 23, 1976) .......... 3

Restatement (Second) of Foreign Relations Law § 165 (1965)................................3

Universal Declaration of Human Rights, Sections 12, 13, 15 and 16 (December 10, 1948).........................................................................................3

Universal Declaration of Human Rights, G.A. Res. 217 (III) A, arts. 9-10, U.N. Doc. A/RES/217(III) (Dec. 10, 1948)........................................................................3

8 Whiteman, Digest of International Law 697 et seq. (1963)..................................3

## I. INTRODUCTION

"Unlike interstate extradition, which is provided for in Article 4, § 2 of the Constitution, there is no inherent requirement of international extradition. Any right of the requesting country to seek extradition, and any requirement that the asylum country extradite fugitives is created and governed by the extradition treaty; 'to determine the nature and extent of the right, we must look to the treaty which created it.'" *McElvv v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981) (citing *Factory v. Laubenheimer*, 290 U.S. 276, 287 (1933)).

## II. THIS COURT DOES NOT LACK SUBJECT MATTER JURISDICTION TO GRANT THIS REQUEST

Defendants contend that this Court lacks jurisdiction to issue an injunction here, but the cases they cite to support that contention are not on point. In *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985), the court held that the scope of the injunction was too broad, stating that it "must be limited to apply only to the individual plaintiffs." That is not an issue here—Mr. Meneshian requests an injunction tailored to his specific circumstance. The Court in *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) and *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) discussed issues surrounding disclosure of information and security clearance. Neither case stands for the proposition that extradition is exclusively within the province of the executive and neither case has any application here.

The other cases Defendants cite to argue that extradition is carried out through the powers of the executive involve the decision to extradite someone *from* the United States *to* a foreign country—the opposite of Mr. Meneshian's circumstance. *See Blaxland v. Commonwealth Dir. of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003); *United States v. Knotek*, 925 F.3d 1118 (9th Cir. 2019); *Sidali v. I.N.S.*, 107 F.3d 191 (3d Cir. 1997); *Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993). Defendants concede that in those circumstances Congress has

carved out a role for the judiciary, but assert, without explaining why, that there is no such role for the judiciary in extradition requests made by the United States. Opp'n at 6.

Neither case Defendants cite as an example of a court rejecting a request for an injunction based on subject matter jurisdiction have application here. Both *Casey v. Dep't of State*, 980 F.2d 1472 (D.C. Cir. 1992) and *United States v. Tuzman*, 2015 U.S. Dist. LEXIS 173780 (S.D.N.Y. Dec. 30, 2015) involved extradition requests made pursuant to a bilateral treaty between the United States and the requested country.[1] That is simply not the case here. Not only does such a treaty not exist between the United States and Ukraine, the extradition request sent in this case does not mention any treaty or other legal authority.

While true that in 1992 in *Casey* the D.C. Circuit held that an individual could not challenge his extradition pursuant to a treaty in the United States prior to his extradition from the requested state, *Casey*, 980 F.2d at 1477-78, later pronouncements from the same court raise questions as to what vitality that decision retains. In 1992, the D.C. Circuit had reasoned that it could not review a preemptive extradition challenge without violating international comity. *Id.* In 2017, the D.C. Circuit declined to follow the same reasoning, holding as follows:

> Because extradition implicates "the sovereignty of a nation to control its borders and to enforce its treaties," (citation), judicial review of such a decision could implicate concerns of international comity, (citation). But these implications do not mean that we lack jurisdiction to review an extradition decision.

*United States v. Trabelsi*, 845 F.3d 1181, 1187 (D.C. 2017)

---

[1] Additionally, neither case is binding on this Court.

Notwithstanding the Government's arguments, jurisdiction is conferred on this Court. 28 U.S.C. § 1350 gives district courts jurisdiction over 'any civil action by an alien for a tort … , committed in violation of the law of nations ….'. The illegal seizure and detention of Mr. Meneshian against his will in a foreign country constitutes a tort. *See Abdul-Rahman Omar Adra v. Clift*, 195 F.Supp. 857, 862 (D. Md.1961). Further, it was in violation of the 'law of nations,' which "may be ascertained by consulting the works of jurists, writing professedly on public laws; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." *Lopes v. Reederei Richard Schroder*, 225 F.Supp. 292, 295 (E.D.Pa.1963) (quoting *United States v. Smith*, 18 U.S. 153 (1820)).[2]

Last, with respect to the propriety of Plaintiff's injunction request, a federal district court with jurisdiction over the parties has power to enjoin them from proceeding with an action in courts of a foreign country. *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 (1981) (citing *Philp v. Macri*, 261 F.2d 945, 947 (9th Cir. 1958)).

---

[2] *See* Restatement (Second) of Foreign Relations Law § 165 (1965); 8 Whiteman, Digest of International Law 697 et seq. (1963); *see also* Articles 24, 49, 50, Geneva Convention Relative to the Protection of Civilian Persons in Time of War, August 12, 1949, T.I.A.S. 3365; Sections 12, 13, 15 and 16 of Universal Declaration of Human Rights, approved by the General Assembly of the United Nations on December 10, 1948 (for text, see pt. A of Res. 217(III), U.N. Gen. Ass. Off. Rec.3d Sess., 1st pt., Resolutions, pp. 71-77); 5 Whiteman, *supra*, 230 et seq.; 8 Whiteman, *supra*, 634-660 (position of State Department that detention by Russian authorities a violation of international law); International Covenant on Civil and Political Rights, G.A. Res. 2200A(XXI), art. 9, U.N. Doc. A/6316 (March 23, 1976); Universal Declaration of Human Rights, G.A. Res. 217 (III) A, arts. 9-10, U.N. Doc. A/RES/217(III) (Dec. 10, 1948).

## III. MR. MENESHIAN IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM

### a. Mr. Meneshian's Extradition Would Violate His Constitutional Rights

Plaintiff showed in his opening brief that his fifth amendment rights were violated—and continue to be violated—by the United States' request for extradition and his subsequent arrest and detention in Ukraine. Defendants argue that Mr. Meneshian has no fifth amendment rights simply because he not currently present in the United States. Opp'n at 8-10. That argument ignores the fact that Mr. Meneshian was arrested pursuant to a request by the United States based on a warrant issued by the State of California—circumstances that are similar to those in *Boumediene v. Bush*, 553 U.S. 723, 732 (2008), in which non-American detainees were being held in Guantanamo Bay pursuant to crimes alleged by the United States. It also ignores that fact that Mr. Meneshian was present in the United States when the alleged conduct took place. Defendant relies on cases that are inapposite. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (discussing immigration law); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) (discussing applicability of the fourth amendment to a search conducted in Mexico); *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (discussing detention in Germany by the U.S. Army). In reality, courts have (1) afforded non-citizens constitutional rights, and (2) extended constitutional protections beyond the borders of the United States. *Reid v. Covert*, 354 U.S. 1 (1957). It has long been held that even when the United States acts outside its borders, its powers are not "absolute and unlimited" but are subject "to such restrictions as are expressed in the Constitution." *Murphy v. Ramsey*, 114 U.S. 15, 44 (1885).

Several of the cases cited by Defendants actually support Plaintiff's

position. In *Zadvydas v. Davis*, the Court acknowledges a distinction between an alien who has effected an entry into the United States and one who has never entered. *Zadvydas*, 533 U.S. at 653. The Court concluded that that indefinite detention of aliens who were admitted to the United States but subsequently ordered removed would raise serious constitutional concerns. Similarly, in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), the Court acknowledged that case law establishes that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." Here, Meneshian was present in the United States before being detained in Ukraine and the conduct at issue was allegedly committed within the United States. Defendants cannot refute that Mr. Meneshian was present in and developed connections with the United States. His arrest and detention are therefore subject to constitutional concerns.

Despite Defendants' arguments, the *Ker-Frisbie* doctrine has no bearing on this Court's decision. The *Ker-Frisbie* doctrine and the Court's decision in *United States v. Alvarez-Machain*, 504 U.S. 655 (1992) allow courts to try defendants ***in spite of*** how they were obtained. It does not follow that the United States is therefore allowed to pursue the abduction of a foreign national "in violation of general international law principles."

**b. Extradition Should Not Be Sought Without a Treaty or Other Authority**

Defendants argue that extradition can be properly requested without a treaty or other authority by relying on authorities that stand for the proposition that the U.S. government and foreign governments have the discretion to surrender fugitives for reasons of comity, prudence, or even on a whim. Opp'n at 10-11. Plaintiff does not refute this. Plaintiff's argument is rather that the U.S.

government lacks a legal basis to request the extradition of an accused person without a treaty in place—a related, but importantly distinct point. None of Plaintiff's arguments purport to restrict Ukraine's ability to transfer an accused person for its own independent reason.

Defendants' contention that the United States "has an established practice of generally making requests to Ukraine for the return of fugitives pursuant to UNTOC or other lawful means under Ukrainian law," (Opp'n at 11), lacks adequate support. Defendants cite to Mr. Heinemann's declaration, which states merely that the United States makes requests to Ukraine through the diplomatic channel for the return of fugitives under the UNTOC, or by other means available under Ukrainian law. Heinemann Decl. ¶ 7. Mr. Heinemann makes no mention of how often the United States does so and under what particular circumstances. *See id*. He certainly does not state that the United States has an "established practice" of making such requests. *See id*. Defendants also cite a Federal Public Defender's letter brief to the court in *United States v. Khalupsky*, No. 15-CR-381, 2018 WL 3127226 (E.D.N.Y. May 29, 2018), setting forth the parties' agreement that the U.S. government would not reference Khalupsky's extradition from Ukraine during his trial, mooting the defense's motion in *limine* made earlier that the U.S. government should be blocked from mentioning that Khalupsky contested his extradition in Ukraine. Such an agreement provides no support for Defendant's assertion that the United States has an "established practice" of generally making requests to Ukraine for the return of fugitives pursuant to UNTOC or other lawful means under Ukrainian law.

In *Valentine v. United States ex rel Neidecker*, 299 U.S. 5 (1936), the Supreme Court held as a matter of domestic United States law that the Constitution requires some legislative authorization, either by treaty or statute,

before the executive branch can exercise the power to extradite. Similarly, the Court quoted a leading treatise on extradition for the proposition that there was no authority to extradite "in the absence of a conventional or legislative provision." *Id.* (quoting J.B. Moore, I TREATISE ON EXTRADITION AND INTERNATIONAL RENDITION §16 (1891)). As the Court in *Valentine* observed, "[t]he desirability ... of providing for the extradition of nationals of the asylum state is not a substitute for constitutional authority." *Id.* at 8.

**c. The UNTOC Does Not Provide a Legal Basis for Mr. Meneshian's Extradition**

As an initial matter, the extradition request for Mr. Meneshian does not contain a single mention of a treaty. The extradition request was not made pursuant to any stated legal authority. In fact, in the declaration of Tom Heinemann attached to Defendants' Opposition, Mr. Heinemann never states that Defendants are relying on the UNTOC treaty here or that it is at play in any way in this extradition. *See* Decl. of Tom Heinemann. Rather, he contends that the United States made a formal request through a diplomatic channel for Mr. Meneshian's return to the United States, not an extradition request. *Id.* ¶ 8. Mr. Heinemann does not specify which document constituted the "formal request," nor does he attempt to connect what was done in this case to what is generally done in extradition matters or explain why the request made no mention of the UNTOC. *See id.* Had the United States wished to rely on the UNTOC Convention, it would have cited the UNTOC Convention in its request for extradition. It did not do so, however.

Further, the UNTOC[3] does not, as the government argues at Opp'n at 13,

---

[3] *See* United Nations Convention against Transnational Organized Crime found at https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XVIII-12&chapter=18&clang=_en

provide a basis to seek the extradition of [any] defendants who flee to Ukraine. Rather the UNTOC applies only to certain defendants meeting specific criteria. Article Three[4] establishes that the scope of the UNTOC is limited to: "[the] offences established in accordance with articles 5, 6, 8 and 23 of this Convention" which also meet the definition of a serious crime, and which is a transnational[5] offense and involving organized criminal groups. The murder alleged here is not transnational in nature, rather was a local crime apparently occurring in the heat of an argument and not pre-planned. Furthermore, the offense is not one of the enumerated offenses in Articles 5, 6, 8 or 23 as it is not participation in an organized criminal group as defined in Article Two[6], nor money laundering, corruption or obstruction of justice.

---

[4] Paragraph one of Article 3 states in its entirety:

> 1. This Convention shall apply, except as otherwise stated herein, to the prevention, investigation and prosecution of:
>
> > (a) The offences established in accordance with articles 5, 6, 8 and 23 of this Convention; and
> >
> > (b) Serious crime as defined in article 2 of this Convention; where the offence is transnational in nature and involves an organized criminal group.

[5] Paragraph 2 of Article Three states that:

> an offence is transnational in nature if:
>
> > (a) It is committed in more than one State;
> >
> > (b) It is committed in one State but a substantial part of its preparation, planning, direction or control takes place in another State;
> >
> > (c) It is committed in one State but involves an organized criminal group that engages in criminal activities in more than one State; or
> >
> > (d) It is committed in one State but has substantial effects in another State.

[6] Article two defines (a) "Organized criminal group" shall mean a structured group of three or more persons, existing for a period of time and acting in concert with the aim of committing one or more serious crimes or offences established in accordance with this Convention, in order to obtain, directly or indirectly, a financial or other material benefit.

**d. The Fugitive Disentitlement Doctrine Has No Application Here**

The government argues that ultimately Mr. Meneshian cannot succeed on the merits of his Complaint arguing that the case will be dismissed because of the fugitive entitlement doctrine. Opp'n at 15. The government is wrong. First, the application of the doctrine is discretionary not mandatory. *Hussein v. INS*, 817 F.2d 63 (9th Cir. 1986 (Norris, J. concurring). Furthermore, there is no case in which a court has granted dismissal based on this doctrine where the subject of the extradition seeks justice from an American civil court to block a request for extradition to a foreign country which request, as here, is merely a diplomatic request not based on any treaty, or written agreement (ex. MLAT) and, where the subject moved to his home country well before any criminal process began. There is no dispute that when Mr. Meneshian moved abroad that there was no criminal complaint filed.

None of the cases cited by the government are similar to this case. The doctrine was applied to dismiss Conforte's civil case where he sought to use the court's powers to gain a civil or "property" advantage while remaining a fugitive. *Cf. Conforte v. Comm'r of Internal Revenue*, 692 F.2d 587, 589 (9th Cir. 1982) (using use the civil tax court to block the release to the IRS of evidence obtained by the criminal grand jury). However the doctrine was not applied to dismiss Van Cauwenberghe's effort to appeal the district court's order of liquidation of his interest in stock certificates as even though he left the United States in violation of the court's order, he did not appear to be "flouting the processes of the law", nor, "attempting to bargain with or to obtain a tactical advantage over the court." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1055 (9th Cir. 1991). Here contrary to the cases the government relies upon, Mr. Meneshian's civil case challenges the legal authority to seek his extradition and is not a collateral effort

to seek a property right or other collateral benefit while remaining a fugitive.

The United States Supreme Court developed what has come to be known as the "doctrine of fugitive disentitlement" in *Molinaro v. New Jersey*, 396 U.S. 365 (1970), when it held that the Court did not need to adjudicate the pending appeal of a fugitive because the defendant's escape disentitled him to call upon the Court's resources for determination of his claims. Subsequent to *Molinaro*, however, courts have recognized that the disentitlement doctrine is one based on equitable considerations, such that its application is dependent upon the unique circumstances of each case. *Van Cauwenberghe*, *supra*, at 1054. Here, Mr. Meneshian's circumstances are similar to those in *Van Cauwenberghe*, insofar as he is neither "flouting the processes of the law" nor "attempting to bargain with or to obtain a tactical advantage over the court." On the contrary, Mr. Meneshian's is merely requesting that the Court prohibit the Government from seeking something that it is not allowed to seek under United States law.

## IV. MR. MENESHIAN WILL LIKELY SUFFER IRREPARABLE INJURY ABSENT RELIEF

In this case, at least one aspect of the injury would be severe, long-lasting, and irreparable—Mr. Meneshian would lose his life in Ukraine as he knows it. He would be brought into the United States, where he no longer has any relatives. He would then be forced to defend himself against accusations of murder, a charge he denies and for which neither he nor his lawyers have been provided any evidence. Another aspect of the injury is the violation of his Constitutional rights. When such a violation is shown, courts do not require any further showing of irreparable injury. *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

/ / /

## V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

In the Ninth Circuit, for a temporary a preliminary injunction to issue, a plaintiff can meet his burden by showing either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions as to these matters and that the balance of hardships tips sharply in plaintiff's favor. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-840 (9th Cir. 2001). "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska, ex rel. Yukon Flats Sch. Dist. v. Native Vill. of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988). Here, the balance tips toward Mr. Meneshian. If the injunction issues, Defendants will simply be asked to exercise patience. If the injunction does not issue, Mr. Meneshian will be asked to give up his liberty and property in violation of the U.S. Constitution and other federal law. As the allegations in the Complaint demonstrate, there is, at the very least, a reasonable chance of success on the merits, if not a probable or likely chance.

## VI. CONCLUSION

For the foregoing reasons, Mr. Meneshian's request for a preliminary injunction should be granted.

Date: December 2, 2019

Respectfully submitted,
KAYE, McLANE, BEDNARSKI & LITT, LLP

By: */s/ Marilyn E. Bednarski*
Marilyn E. Bednarski
Alexey V. Tarasov
Attorneys for Plaintiff HAKOP MENESHIAN